And we'll move on to 22-1517, Interactive Games v. DraftKings. May it please the Court. I think it's important to start with what the claims state in this case. And that is there has to be an apparatus. The apparatus is connected to a mobile gaming device and that the apparatus, not the gaming device, but the apparatus increments a counter as the user engages in wager-based gaming activity via the gaming device from within an approved gaming area. And then the apparatus stops the counter when the gaming device moved to an unapproved area. So everyone acknowledges that Wells nor Harcum expressly disclosed a counter. Wells does disclose a mobile device, and that's the thing that the Board said met the mobile gaming device for the claims. But the Board simply went from there to asserting that the concept of measuring time in Harcum could be done with a counter. It simply said that it could be turned on and off if a mobile device entered or left an approved area. And then critically, when it fabricated this counter that's not found in any of the prior art, it stuck it in the wrong place. It stuck that counter, it says, in Wells' mobile device, even though the claims are quite clear that the incrementing is being done by the apparatus and not the mobile device. The point is that there is simply no disclosure of a counter anywhere in any of this prior art. And we know that they fabricated one when combining them because they couldn't even put the counter that they did fabricate into the right location. Moreover, if anything, the fact that when they stuck the counter in the wrong spot in their combined analysis demonstrates, if anything, that putting the counter where it is actually located in the claims is not obvious. Otherwise, they would have presumably put the counter in the location that's required by the claims. Moreover, there's really no good reason to modify Wells. This is essentially entirely based upon hindsight bias. There is no reason that you'd want to make Wells have a timer that's keeping track of time so that you can keep people from gambling. Harcum has in it the assumption that there's going to be need to have a limitation on time to keep problem gambling from occurring. Wells is entirely the opposite. The whole point of Wells is to increase gambling. The entire document is all about how do we make more gambling happen. When you take a piece for Harcum that's talking about let's make more gambling occur and say, well, let's combine it with something that will slow down gambling. But it still recognizes there are needs for limitations, right? It discloses limitations. So you're right that maybe the thrust of it is let's do more gaming. It's kind of like reminding me when I'm driving and listening to all of these gaming commercials on TV and they go on and on and talk about how wonderful gambling is and how you should do it. And at the end they have, and I don't know if they may be required to do that by law, saying, by the way, we don't want you to gamble too much. So, I mean, there's an inherent recognition that is accepted for all kinds of the right reasons that we don't want people to overdo this gambling stuff. But that doesn't mean that Wells says forget any limits. All we care about is doing as much gambling as possible no matter what. Yes, but the way that Wells approaches it is that the limits on gambling are obstacles that it has to overcome. It recognizes that there's been problems that you want to be able to ensure people are gambling in legal locations. Those are obstacles that Wells tries to address, and that's the whole point of the patent claims. In contrast, it's not an objective that Wells wants to achieve. Wells does not say slow down your gambling. Whereas Harcum, it does, where Harcum has limitations. So Wells doesn't take it as a, it takes the limitations on gambling as a problem, not something that we should also insert into it. And that's the fundamental flaw in trying to combine the two. Teaching away is a pretty hefty standard. I mean, because even if it doesn't, and I'm not sure I agree with you entirely, that it doesn't include anything that could be determined as a limitation or a limit on play. But even if it didn't, it doesn't say, and therefore there should be no limitations, it doesn't affirmatively say there should never be any limitations on gaming, and you should just game as much as you want. To be sure, but if you're going to combine two references, it was up to the board to say why you should actually combine two references that are pointing at different directions. And the sole reason that the board came up with... I guess I'm not clear on what pointing in different directions are. When we combine references, we're combining two different things. So they're often dealing with something a little different. Right, and what I'm saying, what I meant by pointing in two directions is one system is trying to increase gaming, the other system is trying to decrease gaming. Why would you combine those two things? And the sole reason the board came up with for why you might want to do so is because there are design choices. People make design choices. It's quite a different thing to say that there's trade-offs to be had in any given system, and so we have to figure out how to best and optimally design something. It's quite different to say these two references are teaching... the whole reason for the two references are fundamentally at odds with each other. That's not a design choice anymore. That's just choosing between two options. And so therefore, there's really no reason that was given by the board in its decision as why to provide such a motivation. It just said that there would be a good reason to combine them, and that's insufficient. Just like there was insufficient reasoning as to why you would either start or stop a timer. The timer, to be clear, the board thinks was started by the Wells art and then stopped by the Parkham art. The only reason you get to a timer, a counter at all, in these prior art references is by looking at the claims and using the claims as a map to where to find things in the prior art. And that's inappropriate. There's simply... The start, stop limitation doesn't add anything inventive. I mean, that was all known in the art, right? There's nothing that was disclosed in any of the prior art of record that shows a counter, and neither Parkham nor Wells has a counter, and no one agreed, no one, everyone admits that it does not neither expressly demonstrate a counter. It's simply the concept of keeping track of time in some way. A counter here in the claims is an incremental one. You increment the counter when you're gaming on the mobile device and you're inside the gaming zone. You stop incrementing the counter when you leave the zone. So it's a very specific claim language that requires a very specific type of counter, an incrementing one that does a very specific thing. It doesn't mean just a general clock. It doesn't mean just a general taking differences in time. It's an incremental counter, and that was what is found in the claims, and that is the thing that the PTAB assumed existed. And if we look at page 37 where they did so, they go on for page after page without any citations to any art or any evidence. They just say that we think that this would have been an obvious thing to do. There's nothing in there that's actually saying, well, here's where the counter is found or where the counter is turned on and off. Rather, they invent this counter. They say it would have been obvious to have it, and then when they finally get around to saying where does this counter live, that's on page A38, they say this suggests a portable gaming device that increments the counter. That's not what the claims require. The claims require that the separate apparatus increment the counter. So they can't even put the counter that they imagine exists somewhere to be even in the right place. Therefore, there's just no substantial evidence to support the view that this counter is found anywhere in this prior art. Can you reserve the remainder? Yes, I reserve the remainder. Thank you. You would probably assume that the 967 patent has a substantial and lengthy discussion of a counter. It does not. The word counter does not appear in the specification of the patent at all. Incrementing a counter does not appear in the specification at all. It only appeared in the claims, and it appeared in the claims three years after the original filing date. Let me, if I may, describe for you what is in the 967 patent. Appendix 70. At lines 48 through 53 of column 10, it says, the period of time or amount of time may be cumulatively determined. For example, an activity may only be permitted for a period of five hours, collectively. Time counting toward the five hours might stop and start depending upon the location of the user. So what's been described here is a five-hour playing time, a cumulative period of time out of some larger amount of time, and you start and stop in order to figure out what that cumulative amount of time is. Let's go first to what is disclosed in Wells. Wells has a reference, in addition to many other restrictions, at appendix 2185 in paragraph 110. It says, as another example, the gaming machine may terminate a wireless gameplay session after a certain number of games, after a certain amount of time, or after a period of inactivity. A reference to time and a limitation. We now turn to Harcum. Remember the original patent, 967, talked about five hours of cumulative time, start and stop in order to figure it. At appendix 2205, the Harcum reference, it says, in paragraph 33, in one embodiment, user is optimally prompted to designate a playing limit in terms of playing frequency or playing time. For example, the user may limit his or her playing time to a maximum of five hours within a seven-day period or no more than once within a day. When the user's playing time or playing frequency exceeds the limit, the user is asked to exit the game. Incredibly, what we have is the entire disclosure in the 967 patent and the prior art literally describe this idea of time limitation to a five-hour period in which you start and stop in order to figure out what that is over time. So where did counter come in in all this language in the patent? Claim one. Well, that came up during prosecution. And in prosecution, at appendix 1125, the examiner used the idea of a counter as synonymous with a timer. So this idea of a special software counter that needs to be incremented or stopped and so forth, all we're doing is we have something that measures time, that starts and stops, and comes up with a cumulative. So substantial evidence certainly supports the board's decision. The suggestion that they fabricated this counter in Harcum is in fact wrong. The fabrication actually occurs in suggesting that there is some special structure, and that only appears in their argument and their reply, where they, for the first time, claim that there was some special counter that needed to be incremented and started and stopped per the claim language. But the interpretation of that claim language is certainly and should be completely understood to simply mean a timer that can be started and stopped, which is clearly in the prior art. In fact, it's incredible that they both use the same five-hour time period. There's also a reference, I believe, in which they say the location of the board did indicate that the counter was in the portable device. If you look in the substance of the – And is your argument that that was just harmless error? That was harmless error, Your Honor. It goes on for pages after page, in which they refer to – the board refers to the location of the timer as being within the wireless game player server. And that's in appendix 28, 31, 31-32, 39-40. So there's substantial evidence to support this. Given the length of the 60-page decision, the idea that there's an error in it somewhere, I think it's certainly understandable. But the substance of the decision certainly places the activity at the server. What about teaching away? Teaching away. The suggestion that Wells teaches away. Well, it literally – you cannot have a teaching away argument when literally the reference teaches the opposite. And as I've already read in the record, I can pull it up again. Wells teaches the idea of putting a limitation. Let's see. Again. But Wells is – I mean, I think your friend's argument is the essence of Wells is it's – the point of Wells is to increase gambling opportunities and allowing gamblers to – But as the court has already recognized that any sort of responsible gambling activity that is condoned and licensed by a state is also subject to restriction against excessive gambling. And Wells is no different and makes a note of that in paragraph 110 where it again says, as another example, the gaming machine may terminate a wireless gameplay session after a certain number of games, after a certain amount of time, or after a period of inactivity. So you cannot have a teaching away when the reference expressly teaches that fact. Any other questions? Thank you. Thank you. Very briefly. It's true that Wells and Harcum talk about time in general, but the claim requires more than just time in general. The claim requires specifically you increment a counter as a user engages in at least one wager-based gaming activity via the gaming device from within the approved gaming area. The claim then requires stop incrementing the counter when you leave the area. So the concepts of general, well, there's time here, there's time there, which DraftKings just pointed to, doesn't tell you anything about that there's a timer or a counter or an incrementing counter that starts at a certain time and stops at a certain time. And certainly it's clear that the counter is found in the apparatus. It's not found in the mobile gaming device. So when the board said the opposite, as DraftKings just admitted, that was error. And it is not harmless error because it's a claim limitation. It is reading out a claim limitation by doing so. So every claim limitation matters. This specific one matters. The board, when trying to figure out and having an extended discussion without citations to any evidence, decided, well, we think there ought to be a counter. It would be obvious to have a counter. Put it in the wrong location. If you're going to do that, if you're going to fabricate and say it's obvious and you can't even put it in the right location as required by the claim, you've committed something more than just harmless error. So you think we should remand this entire case back to the board so they can tell us or confirm that there was a wording error in what they did? It's not just a wording error, Your Honor. There is no evidence of a counter anywhere. So they had to make one up. And so when they did, they put it in the wrong spot. So it's further proof that the opinion itself was sloppily written, but it was also proof that there's just no counter to be found. They couldn't find one in the references, so they invented one, and then they put it in the wrong spot. And so that demands reversal because the limitations just aren't met. That's a little harsh to say the opinion was sloppy because they gave it. That's a little harsh. Fair enough, Your Honor. Thank you. We thank both sides, and the case is submitted.